## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| NATIONAL CONFERENCE OF BAR EXAMINERS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:04-CV-03282-JF |
| MULTISTATE LEGAL STUDIES, INC., d/b/a PMBR, ROBERT FEINBERG, and DONA ZIMMERMAN, | ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
## AND PREJUDGMENT INTEREST

Pursuant to 17 U.S.C. § 505 and this Court's Order of August 23, 2006, Plaintiff National Conference of Bar Examiners ("NCBE"), the prevailing party in this action, submits its application for attorneys' fees and prejudgment interest.

As explained in the Memorandum of Law and the Declarations of Barbara Mather and Robert Burgoyne, filed contemporaneously herewith, NCBE is entitled to recover $2,684,698.85, representing $1,556,092.00 in attorneys' fees, $75,710.17 in expenses, and $1,052,896.68 in prejudgment interest. The grounds for this motion are set out more fully in the Memorandum of Law and Declarations submitted herewith.

Wherefore, Plaintiff respectfully requests that its motion be granted and that the Court award it $2,684,698.85 in attorneys' fees, expenses, and prejudgment interest, jointly and severally against defendants Multistate Legal Studies, Inc., Robert Feinberg, and Dona Zimmerman.

Respectfully submitted,


 /s/ Barbara W. Mather
Barbara W. Mather
Christopher J. Huber
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103

Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

Dated: September 11, 2006                    ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL CONFERENCE OF BAR EXAMINERS, <br><br> Plaintiff, <br><br> v. <br><br> MULTISTATE LEGAL STUDIES, INC., d/b/a PMBR, ROBERT FEINBERG, and DONA ZIMMERMAN, <br> Defendants. | )<br>)<br>)<br>)<br>)<br>)      No. 2:04-CV-03282-JF<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND PREJUDGMENT INTEREST

This lawsuit involved numerous procedural motions, protracted nationwide discovery, cross-motions for summary judgment, and a bench trial. It was aggressively defended by the defendants, using multiple lawyers from three law firms located in three different states. Plaintiff National Conference of Bar Examiners ("NCBE") ultimately prevailed on all of its claims. NCBE was awarded judgment jointly and severally against defendants Multistate Legal Studies, Inc. ("PMBR"), Robert Feinberg ("Feinberg"), and Dona Zimmerman ("Zimmerman") (collectively, "Defendants"), in the amount of $11,961,787, based on Defendants' unlawful acts of copyright infringement and unfair business practices. In addition to this substantial monetary award, NCBE also obtained significant injunctive relief against Defendants, who are now permanently enjoined from, *inter alia*, copying, duplicating, distributing, selling, or publishing any questions obtained directly from any of NCBE's copyrighted, secure tests and from taking any Multistate Bar Examination ("MBE") for any purpose other than to obtain bar admission. *See* Order (Aug. 23, 2006). NCBE achieved complete success in this important lawsuit brought

to preserve the integrity of the licensing examination for lawyers, and should be awarded the reasonable attorneys' fees it seeks herein.

## I.    HISTORY OF THE PROCEEDINGS

NCBE originally filed its complaint for copyright infringement and unfair business practices under California law against PMBR and Robert Feinberg in the United States District Court for the Central District of California.   That is the district in which PMBR is headquartered and in which Mr. Feinberg resides.    Nevertheless, the defendants asked to have the case dismissed or transferred to the Eastern District of Pennsylvania, claiming that it was related to a prior, closed lawsuit – also for copyright infringement – brought by NCBE against PMBR and Robert Feinberg in the early 1990's.   The motion was granted,[1] and NCBE had to re-file its claims in this Court in July 2004.

Once litigation was underway in this Court, Defendants pursued discovery aggressively. They served numerous discovery requests on NCBE, including discovery requests seeking access to NCBE's secure Multistate Bar Examination (MBE) materials – in their entirety – dating back multiple years.   NCBE had to seek a protective order from the Court to shield this sensitive (and completely irrelevant) material from Defendants' unreasonable discovery demands.   NCBE's motion for protective order was granted.   Defendants also pursued broad third-party discovery, seeking documents from NCBE's testing contractor (ACT) in Iowa, and taking non-party depositions in Alaska, California, Utah, Washington, and Iowa.   Other depositions took place in Washington, D.C., Philadelphia, and Wisconsin.   In addition, Defendants produced two of their employees for deposition in California.

---

[1] NCBE is not seeking recovery of fees it incurred in opposing Defendants' efforts to have the California case dismissed or transferred. *See* Declaration of Robert Burgoyne ("Burgoyne Decl.") ¶ 18.

Both parties moved for summary judgment. Some issues were resolved in NCBE's favor on summary judgment, and the case thereafter proceeded to a bench trial for final adjudication. Following trial, the parties submitted "lengthy proposed findings of fact and conclusions of law, accompanied by voluminous exhibits[.]" Adjudication (Aug. 23, 2006). NCBE ultimately prevailed on both its copyright infringement claim and its California unfair business practices claim

## II.     THE COURT HAS ALREADY DETERMINED THAT NCBE IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES.

In its August 23, 2006, ruling, the Court noted:

> Guided by the factors articulated by our Court of Appeals, I conclude that an award of attorney's fees and costs is justified. See Lowe v. Loud Records, 126 Fed. Appx. 545, 547 (3d Cir. 2005). Defendants' willful and egregious copyright infringement harmed the public as well as plaintiffs. States have a compelling interest in regulating admission to the bar both to maintain the integrity of the legal system and to protect the safety of their citizens. By exposing its students to questions likely to appear on the MBE, PMBR undermined the integrity of the bar examinations, possibly causing the admission of unqualified applicants. That the victims of this harm are impossible to identify and the injury impossible to quantify underscores the need to deter would-be copyright infringers.

Adjudication (Aug. 23, 2006), at 22-23. The Court's finding that attorneys' fees should be awarded in this circumstance is consistent with Third Circuit precedent. *See Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) ("Factors which should play a part [in determining whether to award fees] include . . . the need in particular circumstances to advance considerations of compensation and deterrence."). The only remaining consideration, therefore, is what amount of fees is reasonable.

### III.   THE ATTORNEYS' FEES SOUGHT BY NCBE ARE REASONABLE.

### A.   The Hours Expended and Hourly Rates are Reasonable.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This calculation is referred to as the "lodestar," and is "strongly presumed to yield a reasonable fee."  *Wash. v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citations omitted).  Here, a reasonable number of hours were expended on the litigation by NCBE's counsel.  Moreover, NCBE is not seeking reimbursement for all of the fees that it incurred with respect to those hours.

### 1.   The hours expended are reasonable.

Counsel for NCBE has made "a good-faith effort to exclude from [its] fee request hours that are excessive, redundant, or otherwise unnecessary . . . ."  *Hensley*, 461 U.S. at 434.  For example, time billed for limited timekeepers has been omitted entirely, and fees incurred in opposing Defendants' efforts to dismiss the case as originally filed in California and in opposing Defendants' motion to compel production of documents by third-party ACT, Inc., are not being sought by Fulbright & Jaworski.  Burgoyne Decl. ¶ 18.  Pepper Hamilton has also removed time that it billed to NCBE in connection with its representation in this matter.  *See* Declaration of Barbara Mather ("Mather Decl.") ¶ 7.  The deductions lead to a reasonable number of hours claimed in this fee petition:  2070.65 hours for Pepper Hamilton attorneys and legal assistants and 2170.25 hours for Fulbright & Jaworski attorneys and legal assistants.  *See* Mather Decl. ¶ 4; Burgoyne Decl. ¶ 17.

2.    The hourly rates are reasonable.

The billing rates for the attorneys involved in this litigation are also reasonable. "An attorney's normal hourly billing rate is a logical starting place for valuing an attorney's services taking account of the attorney's legal reputation and status (partner, associate)." *M.S.R. Imports, Inc. v. R.E. Greenspan Co., Inc.*, 574 F. Supp. 31, 35 (E.D. Pa. 1983) (concluding rates claimed by plaintiff's counsel to be reasonable based on "years of practice and expertise, the quality of written submissions and work at trial, and rates charged by similarly-situated attorneys in Philadelphia"), *aff'd mem.*, 732 F.2d 146 (3d Cir. 1984). NCBE bears the burden of establishing through "satisfactory evidence, 'in addition to [the] attorney's own affidavits,'" that the hourly rates for the attorneys in this litigation are reasonable "according to prevailing market rates in the community." *Wash.*, 89 F.3d at 1035 (citations omitted).

The billing rate for Barbara Mather, a partner at Pepper Hamilton, ranged from $500 to $550. *See* Mather Decl. ¶ 3. Associate billing rates at Pepper Hamilton ranged from $210 to $325. *See id.* Legal assistant billing rates at Pepper Hamilton ranged from $90 to $165.[2] *See id.* A document clerk at Pepper Hamilton had a billing rate of $40. The billing rates for Robert Burgoyne, John O'Malley, and Robert Darby, partners at Fulbright & Jaworski, ranged from $465 to $575. *See* Burgoyne Decl. ¶¶ 5, 7-8. Mr. Burgoyne was the principal Fulbright & Jaworski partner involved in this litigation, and his rate ranged from $465 to $550. *See id.* at ¶ 5. Associate billing rates at Fulbright & Jaworski ranged from $180 to $380. *See id.* ¶¶ 9-14. Legal assistant billing rates at Fulbright & Jaworski ranged from $120 to $160. *See id.* ¶ 15. The reasonableness of these rates is established by the attestation of William T. Hangley, who

---

[2] "Because paralegals charge hourly rates and assist the lawyers with their legal work, their fees are properly considered part of 'legal fees.'" *Lowe v. Loud Records*, No. 01-1797, 2004 U.S. Dist. LEXIS 4136, at *11 n.4 (E.D. Pa.) (citation omitted), *aff'd*, 126 Fed. Appx. 545 (3d Cir. 2005).

has provided his opinion that these rates are reasonable according to the prevailing market rates, as well as in light of the nature of this litigation and the skill and experience of the lawyers involved. *See* Declaration of William T. Hangley.

The lodestar attorneys' fee award sought by NCBE, based on the reasonable hours expended and rates applied, amounts to $1,556,092 ($616,675.75 for Pepper Hamilton and $939,416.25 for Fulbright & Jaworski). *See* Mather Decl. ¶ 5; Burgoyne Decl. ¶ 19. The reasonableness of the hourly rates and time expended supports a full award of claimed attorneys' fees to NCBE, recognizing that both Pepper Hamilton and Fulbright & Jaworski reduced the amounts claimed from those actually paid by NCBE.

**B.      The *Lieb* Factors Support an Award of All Fees Sought by NCBE.**

Other factors to be considered in determining a reasonable amount of attorneys' fees in a copyright infringement case include the complexity of the litigation, the amount charged to the client, the relative financial strengths of the parties, and whether bad faith is present. *See Lieb*, 788 F.2d at 156 (citations omitted).[3] All of these factors support an award of all fees sought by NCBE.

This litigation was complex. It involved claims of infringement of a unique type of intellectual property, secure test questions, as well as a state law claim under California law. Defendants raised numerous defenses to NCBE's claims and mounted numerous discovery battles. Both parties moved for summary judgment, and the case eventually proceeded to trial.

---

[3] *Lieb* also suggests that courts should consider "whether the retention of out-of-town counsel with the accompanying increased expense was necessary." 788 F.2d at 156. Here, Fulbright & Jaworski was "out-of-town" counsel, but the firm has represented NCBE for over 15 years, has represented NCBE in its prior copyright litigation against PMBR, and represented other testing organizations in similar litigation. *See* Burgoyne Decl. ¶¶ 3-4. It was, therefore, reasonable for Fulbright to be heavily involved as counsel for NCBE in this lawsuit.

The attorneys' fees sought by NCBE reflect amounts actually charged to NCBE. Mather Decl. ¶ 4; Burgoyne Decl. ¶ 19. Indeed, as explained above, NCBE is not seeking recovery of all the fees it incurred.

The relative size of the parties also supports a full award in favor of NCBE. NCBE is a non-profit corporation with annual revenues of less than $12 million. PMBR's annual revenues exceed NCBE', and Feinberg and Zimmerman, the two owners of PMBR, paid themselves multi-million dollar salaries each year.

Finally, the court has already determined that Defendants' acts of copyright infringement were "willful and egregious." Defendants' bad faith further justifies an award of all the fees sought by NCBE, to further the aims of "compensation and deterrence" underlying the Copyright Act. *Lieb*, 788 F.2d at 156.

## IV.    NCBE SHOULD BE AWARDED ITS REASONABLE EXPENSES AS PART OF ITS ATTORNEYS' FEE AWARD.

NCBE is entitled to recover as part of its reasonable attorneys' fee award certain litigation expenses that are not separately captured as taxable costs under 28 U.S.C. § 1920. *See Abrams v. Lightolier*, 50 F.3d 1204, 1225-26 (3d Cir. 1995) (concluding that reproduction expenses, telephone expenses, travel time and expenses, and postage were recoverable as elements of attorneys' fees in 42 U.S.C. § 1988 action "when it is the custom of attorneys in the local community to bill their clients separately for them) (citations omitted); *Peer Int'l Corp. v. Max Music & Entm't, Inc.*, No. 03 Civ. 0996, 2004 U.S. Dist. LEXIS 12760, at *16-17 (S.D.N.Y. July 9, 2004) ("Pursuant to Section 505 of the Copyright Act, Plaintiffs can also recover their claimed costs for filing fees, postage, messenger expenses, telephone charges, legal research, and other documented expenditures, either as allowed costs under the general cost

recovery statute, 28 U.S.C. § 1920, or as counsel's reasonable out-of-pocket expenses as part of the attorneys' fee recovery.") (citation omitted); *Bridgeport Music v. Lorenzo*, 255 F. Supp. 2d 795, 802 (M.D. Tenn. 2003) (allowing recovery of costs for fax, courier, express delivery, Pacer research, and travel (including airfare, hotel and meals) as part of attorneys' fee award under the Copyright Act), *aff'd*, 371 F.3d 883 (6th Cir. 2004); *Bd. of Trs. of the Leland Stanford Junior Univ. v. Assoc. Bus. Consultants, Inc.*, No. 80-1403, 1989 U.S. Dist. LEXIS 13461, at *7 (D. Kan. Oct. 5, 1989) (allowing expenses for LEXIS research, photocopies, postage, and long distance phone calls as part of attorneys' fee award under the Copyright Act); *but see T.B. Proprietary Corp. v. Heyser Estates, Inc.*, No. 94-6745, 1996 U.S. Dist. LEXIS 12331, at *10 (E.D. Pa. Aug. 23, 1996) (awarding photocopying and electronic research costs, but concluding that "charges for assignment searches, federal express services, litigation supplies, postage, telephone services, shipping and handling, and courier charges will not be awarded").

NCBE seeks $75,710.17 in expenses ($40,573.33 from Pepper Hamilton and $35,136.84 from Fulbright & Jaworski). *See* Mather Decl. ¶ 6; Burgoyne Decl. ¶ 20. This encompasses costs billed to NCBE for photocopies/duplicating, facsimile, telephone, costs related to filings, electronic research, delivery services or messengers, overnight mail, postage, temporary legal assistants, and travel. *See* Mather Decl. ¶ 6; Burgoyne Decl. ¶ 20, Exs. C-D. These expenses are reasonable, *see* Mather Decl. ¶ 6; Burgoyne Decl. ¶ 20, and should be awarded to NCBE as part of its attorneys' fee award.

## V.     NCBE SHOULD BE AWARDED $ 1,052,889 IN PREJUDGMENT INTEREST.

The Court's August 23, 2006, Order invited NCBE to submit an application for prejudgment interest. The prevailing view is that prejudgment interest may be awarded in copyright cases. *See, e.g., Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716-18 (9th

Cir. 2004); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572-73 (7th Cir. 2003); *Klein Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1040-41 (10th Cir. 1990) (noting that prejudgment interest serves both to compensate the plaintiff and to help deter future infringements); *TVT Records v. Island Def Jam Music Group*, 279 F. Supp. 2d 366, 409-10 (S.D.N.Y. 2003); *see also Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1009-10 (3d Cir. 1992) (stating, in a non-copyright case, that an award of prejudgment interest is committed to the trial court's discretion where the applicable federal statute is silent on the question, but noting that "prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable").

The rate of prejudgment interest is discretionary with the Court in this situation, *Skretvedt v. E.I Dupont de Nemours*, 372 F.3d 193, 208 (3d Cir. 2004), but courts in this district have generally applied "the statutory rate for post-judgment interest set forth in 28 U.S.C. § 1961." *Brown v. Continental Cas. Co.*, 2005 U.S. Dist. LEXIS 16681, **17-18 (E.D. Pa. 2005); *see also O'Neill v. Sears Roebuck & Co.*, 108 F. Supp. 2d 443, 445 (E.D. Pa. 2001). NCBE requests prejudgment interest computed from August 1, 2001, through the date of the Court's August 23, 2006 Adjudication and Order, based upon the 1-year constant maturity Treasury yield, as published by the Board of Governors for the Federal Reserve System, as provided for in 28 U.S.C. § 1961(a), compounded annually as provided for in 28 U.S.C. § 1961(b).[4]

To determine a reasonable amount of prejudgment interest for the damages awarded to NCBE based on PMBR's revenues, NCBE is measuring interest incrementally on a yearly basis,

---

[4] 28 U.S.C. § 1961(a) prescribes the use of the "weekly average" 1-year constant maturity Treasury yield rate for the calendar week preceding the date of judgment for computing post-judgment interest. NCBE is using the "monthly average" 1-year constant maturity Treasury yield rate, as described below.

for each year after PMBR's revenues were earned.[5]   NCBE is using August 1st of each year as the presumptive date by which all such revenues had accrued (after the conclusion of PMBR's February and July bar review classes).   The interest rate applied is the monthly average 1-year constant maturity treasury yield, as published by the Board of Governors for the Federal Reserve System, *see* 28 U.S.C. § 1961(a), averaged over the relevant period (from August 1st to July 31st of the following year).   *See* Burgoyne Decl., Ex. E.   Interest has been compounded on an yearly basis, based on the August-July cycle.   Additional revenues are added to the calculation each year, as earned by PMBR.   This methodology is similar to that used by this Court in determining prejudgment interest on backpay awards.   *See O'Neill*, 108 F. Supp. 2d at 445-46; *Young v. Lukens Steel Co.*, 881 F. Supp. 962, 977-78 (E.D. Pa. 1994).[6]

      The calculations are set out on the following page.

---

[5] Because of the timing of the payment of the invoice, NCBE is not seeking prejudgment interest on the $59,000 portion of the award based on NCBE's actual damages for having to reprint the 2005 MBE.

[6] NCBE's approach follows *O'Neill* more closely than *Young*, and is therefore more conservative.   In *Young*, the Court applied the 52-week Treasury Bill rate on the day of judgment retroactively in determining pre-judgment interest.   *See* 881 F. Supp. at 978.   If NCBE followed that approach, and applied the weekly average 1-year constant maturity Treasury yield rate for August 23, 2006 (the date of judgment here), the interest rate applicable to all years of prejudgment interest would have been 5.07%, and the amount of prejudgment interest would have been approximately $1.8 million, according to NCBE's preliminary calculations.   Instead, NCBE is applying the applicable historic interest rates, which are considerably lower, and in the 1-2% range for most years.   *See id.*   This results in a prejudgment interest figure of approximately $1.05 million.

08/01/01 – 07/31/02   $1,653,789.33[7] * 2.41%[8]   = **$39,856.32**

08/01/02 – 07/31/03   $1,653,789.33 + $39,856.32 + $2,283,328[9]   = $3,976,973.65
                                                                    * 1.38%[10]
                                                                    **$54,882.24**

08/01/03 – 07/31/04   $3,976,973.65 + $54,882.24 + $2,325,033.67[11]   = $6,356,889.56
                                                                        * 1.46%[12]
                                                                        **$92,810.59**

08/01/04 – 07/31/05   $6,356,889.56 + $92,810.59 + $2,691,656.33[13]   = $9,141,356.48
                                                                        * 2.87%[14]
                                                                        **$262,356.93**

08/01/05 – 07/31/06   $9,141,356.48 + $262,356.93 + $2,949,070.67[15]   = $12,352,784.08
                                                                         * 4.56%[16]
                                                                         **$563,286.95**

08/01/06 – 08/22/06   $12,352,784.08 + $563,286.95   = $12,916,071.03
                                                       *5.10%[17]
(Interest rate applies for only 22 days)              * (22/365)
                                                       **$39,703.65**

**Total Prejudgment Interest Equals $1,052,896.68**

NCBE thus seeks to recover the reasonable prejudgment interest amount of $1,052,896.68.

---

[7] This amount is 1/3 of PMBR's revenues for 2001. *See Adjudication* (Aug. 23, 2006), at 20 n.6.

[8] This is the average of the monthly average 1-year constant maturity treasury yield rate for August 1, 2001, to July 31, 2002, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

[9] This amount is 1/3 of PMBR's revenues for 2002. *See Adjudication* (Aug. 23, 2006), at 20 n.6.

[10] This is the average of the monthly average 1-year constant maturity treasury yield rate for August 1, 2002, to July 31, 2003, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

[11] This amount is 1/3 of PMBR's revenues for 2003. *See Adjudication* (Aug. 23, 2006), at 20 n.6.

[12] This is the average of the monthly average 1-year constant maturity treasury yield rate for August 1, 2003, to July 31, 2004, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

[13] This amount is 1/3 of PMBR's revenues for 2004. *See Adjudication* (Aug. 23, 2006), at 20 n.6.

[14] This is the average of the monthly average 1-year constant maturity treasury yield rate for August 1, 2004, to July 31, 2005, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

[15] This amount is 1/3 of PMBR's revenues for 2005. *See Adjudication* (Aug. 23, 2006), at 20 n.6.

[16] This is the average of the monthly average 1-year constant maturity treasury yield rate for August 1, 2005, to July 31, 2006, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

[17] This is the average of the weekly average 1-year constant maturity treasury yield for August 1, 2006, to August 23, 2006, as published by the Board of Governors for the Federal Reserve System. *See Burgoyne Decl. Ex. E.*

## CONCLUSION

For the foregoing reasons, NCBE respectfully requests that the Court award NCBE the attorneys' fees, expenses and prejudgment interest requested herein, in the following amounts:

| | |
|---|---|
| Attorneys' fees: | $ 1,556,092.00 |
| Expenses: | $     75,710.17 |
| Prejudgment interest: | $ 1,052,896.68 |
| TOTAL: | $ 2,684,698.85 |

Respectfully submitted,

/s/ Barbara W. Mather
Barbara W. Mather
Christopher J. Huber
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103

Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

Dated: September 11, 2006           ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2006, a true and correct copy of the foregoing Plaintiff' sMotion for Attorneys' Fees and Prejudgment Interest, Memorandum of Law in Support of Plaintiff's Motion, together with the Declarations of Robert Burgoyne, Barbara Mather, William Hangley, and the exhibits thereto, were served on the following individuals, in the manner noted:

Manny D. Pokotilow (via ECF, hand delivery and email)
Salvatore Guerriero
Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd.
1635 Market Street, 11th Floor
Philadelphia, PA 19103-2212

Anthony L. Press (via first-class mail, postage prepaid)
Morrison & Foerster LLP
555 W. Fifth Street, Suite 3500
Los Angeles, CA 90013-1024

/s/ Christopher J. Huber
Christopher J. Huber